504 So.2d 644 (1987)
STATE of Louisiana
v.
Stephen D. HUBER.
No. KA-6290.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1987.
Rehearing Denied April 15, 1987.
*645 Ralph S. Whalen, Jr., Oestreicher, Whalen & Hackett, New Orleans, for defendant.
John F. Rowley, Dist. Atty., Walker H. Drake, Jr., Asst. Dist. Atty., Chalmette, for plaintiff.
Before GULOTTA, BARRY and WARD, JJ.
WARD, Judge.
Stephen Huber was convicted of possession with the intent to distribute a controlled dangerous substance, marijuana, and sentenced to serve two years at hard labor. Huber appeals, arguing five assignments of error. We affirm the conviction and sentence.
By his first assignment of error Huber argues that there was insufficient evidence to support a verdict of guilty. The standard for review of the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In order to convict Huber of violating La.R.S. 40:966(A), the State had to prove beyond a reasonable doubt that Huber did possess with intent to distribute marijuana.
Stephen Huber, Michael Manzella, Sr., and Pamela Oakman were charged with possession of marijuana with the intent to distribute. Manzella and Oakman pleaded guilty to these charges the day before Huber was brought to trial, and Manzella and Oakman testified for the State and against Huber. Other witnesses were called to give evidence and to corroborate Manzella and Oakman.
A summary of their testimony shows that Manzella was experiencing financial difficulties and decided to sell marijuana to pay off some of his debts. He contacted a *646 female acquaintance who was not identified but whom he believed to be a drug addict to ask if she could help him sell marijuana. This acquaintance told Manzella she knew people in Lafayette who would buy, but that they only dealt in large quantities. Manzella spoke with his wife, and she called a long-time friend, Pamela Oakman, and succeeded in persuading her to get marijuana for her husband, Manzella, to sell.
Apparently Manzella then contacted his acquaintance and told her he could get a quantity of marijuana for her Lafayette friends. As it turned out, Manzella's acquaintance was an FBI informant, and the FBI, and ultimately the St. Bernard Sheriff's office, were notified. Four or five days after the initial contact, the sale was arranged and was to take place at a motel in St. Bernard Parish.
It was Oakman's testimony which directly linked Stephen Huber to the crime. She testified that Manzella's wife contacted her by telephone and requested that she assist Manzella in obtaining drugs to sell. After the telephone conversation, she contacted Huber who agreed to supply her with thirty pounds of marijuana. After informing Manzella that she had thirty pounds, and after Manzella agreed to sell it, Oakman met Huber on September 14, 1984 at approximately 7:30 p.m. in the Schwegmann Supermarket parking lot in Chalmette, and he put thirty pounds of marijuana in her car. Before Huber left St. Bernard, he gave Oakman two telephone numbers at which to reach him. Oakman delivered the marijuana to Manzella's home at about 8:00 p.m. Manzella then took one pound of the marijuana to a motel so that the purchasers, who were FBI agents, could inspect it. Manzella then returned home and picked up the remaining twenty-nine pounds of marijuana to deliver it to the motel. After putting the marijuana in his van, Manzella started back to the motel, but St. Bernard Parish Sheriff deputies arrested him six blocks from his home.
Oakman testified that while she and Manzella's wife were waiting for Manzella to return from making the delivery, FBI agents forced entry into the Manzella home. Oakman was interrogated for about twenty minutes. She said that the agents threatened to implicate her husband if she did not cooperate. She told them that Huber had supplied her with the marijuana.
Oakman further testified that she then made a series of telephone calls to Huber while the FBI agents watched and listened. She stated that she made these calls in order to carry through a scheme worked out by the law enforcement officers to lure Huber back to St. Bernard Parish. The last call, Oakman explained, was made from a pay telephone, and she told Huber that her car was broken down at a donut shop on Paris Road, that she had the money with her, and that she was frightened. She pleaded with him to come get her. When Huber arrived, he was arrested by the FBI agents.
The FBI agents who testified described the purchase of marijuana from Manzella at the motel, the arrest of Manzella near his home, the seizure of marijuana from Manzella's van, and the arrest of Pamela Oakman. Most importantly, however, they corroborated Oakman's testimony of the telephone calls and in particular, that they listened to Oakman's conversations with a man named Steve. They later verified that one of the numbers Oakman called was an unlisted number for Stephen Huber in Metairie, Louisiana.
Huber relied on an alibi defense and produced a number of witnesses who placed him in various places at different times on the evening of September 14, 1984.
In spite of the alibi witnesses, it is clear that viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found Huber guilty of possession with intent to distribute marijuana.
By his second assignment of error, Huber argues that the Trial Court erred when it overruled his objection to the admission into evidence of the State's exhibits which included twenty-nine bags of marijuana, plastic bags and two boxes which held the marijuana. Huber argues the *647 prosecutor failed to establish a chain of custody of the objects from their seizure to their introduction into evidence at the trial.
The criteria for the admission into evidence of contraband seized by law enforcement officers was set forth in State v. Sweeney, 443 So.2d 522 at 528 (La.1983) in which the Court held that
the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Drew, 360 So.2d 500 (La.1978). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
The record shows that Manzella identified the box that contained twenty-nine pounds of marijuana wrapped in plastic bags. He further stated that the marijuana inside the box was the marijuana that Oakman delivered to him. Oakman testified that the box Manzella had identified looked like the type of box that Huber put into her automobile.
Officer Carmel Lavoi identified the twenty-nine plastic bags in which the marijuana was packed, a box which came out of Manzella's van, and another box into which the first box and its contents were placed. Officer Lavoi further testified that the smaller box was sealed in his presence on September 14, 1984. Officer William Aldridge also identified the twenty-nine plastic bags which contained one pound of marijuana each and the box which he initialed, sealed and took to the crime lab.
This evidence sufficiently establishes that it was more probable than not that the exhibits presented by the State were the ones connected with the case. Huber's second assignment of error is therefore without merit.
By his third assignment of error, Huber argues that the Trial Court erred in denying him the right during cross-examination to ask Manzella the name and date of his contact with the confidential informant. He argues that the jury should have heard this information in order to make a fair assessment of Manzella's credibility.
"The informer privilege is the State's privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime." State v. Oliver, 430 So.2d 650, 652 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). A confidential informant's identity will be divulged only under exceptional circumstances. The defendant bears the burden of showing exceptional circumstance warranting disclosure. State v. Davis, 411 So.2d 434 (La. 1982). If the informant does not participate in the crime, however, the defendant cannot compel disclosure. Davis, supra; State v. Medford, 489 So.2d 957 (La.App. 5th Cir.1986).
In the present case, the informant did not initiate the transactions. Rather, Michael Manzella contacted the informant. Nor was the informant present during any transaction. We do not consider that because the informant notified the FBI that she knew someone was trying to sell marijuana, that she participated in the crime. Hence, Huber has failed to demonstrate exceptional circumstances. This assignment is without merit.
By his fourth assignment, Huber argues that the Trial Court erred in overruling his challenge for cause of three prospective jurors. To prevail on such an argument a defendant must show 1) that the Trial Judge erred in refusing to sustain a challenge for cause by the defendant; and 2) that the defendant exhausted all of his peremptory challenges. La.C.Cr.P. art. 800 comment (a); State v. Smith, 491 So.2d 641 *648 (La.1986). Huber did not exhaust his peremptory challenges; hence we reject this assignment of error.
By his fifth assignment of error Huber contends that the Trial Court improperly restricted voir dire examination. The following question was posed by defense counsel, and the Trial Court sustained the State's objection.
BY MR. WHALEN:
Thank you, your Honor.
Let me pose a hypothetical situation. Raising what we talked about about the presumption of innocence, raising what we talked about the burden of proof, if one person took the stand and testified that Steve Huber was guilty of this offense or Steve Huber had marijuana in his possession and if you believed that one person was lying for their own purposes, and that was the only evidence you heard that Steve Huber possessed marijuana was from that person that you believed to be lying for their own sake. What would your verdict be, Mr. Berry?
"The purpose of voir dire examination is to determine the qualifications of prospective jurors `by testing their competency and impartiality and discovering bases for [the] intelligent exercise of cause and peremptory challenges'". State v. Bell, 477 So.2d 759, 765 (La.App. 1st Cir. 1985), writ denied 481 So.2d 629 (La.1986). The defendant should be able to make inquires of prospective jurors to enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. "However, voir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence (or its weight) to be offered at trial." Id. at 766.
The hypothetical question posed by Huber's counsel called for a prejudgment of evidence to be offered at trial and therefore was properly excluded. This assignment of error is without merit.
For the above reasons, Stephen Huber's conviction and sentence are affirmed.
AFFIRMED.