593 So.2d 811 (1992)
STATE of Louisiana
v.
Terryl CARGO.
No. 90-KA-1557.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1992.
*813 Gregory S. Duhy, Chalmette, for defendant.
Before BYRNES, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The defendant, Terryl Cargo, was charged by bill of information with distribution of cocaine, a violation of R.S. 40:967A(1). His motion to suppress the evidence was denied. Following a trial by jury the defendant was found guilty as charged. On appeal, he raises four assignments of error.
In the fall of 1987, the Plaquemines Parish Sheriff's Office conducted an undercover narcotics investigation in the southern half of the west bank of the parish. On October 30, 1987, at approximately 10:00 p.m., Harris Farlough, an undercover agent, went to J.U.'s Bar in Sunrise to purchase drugs. Farlough was accompanied by a confidential informant.
Farlough and the informant met two men outside the bar towards the rear of the building. Farlough asked them where he could get some "rocks," meaning crack cocaine. The shorter of the two men, whom Farlough identified in court as the defendant, produced a medicine bottle and poured some "rocks" into his hand. Farlough and the defendant discussed the price of the drugs; and Farlough selected the largest "rock" and paid the defendant $25.00. The defendant and his companion left, and Farlough and the informant left to meet the surveillance team.
When Farlough met with Agent Charles Young of the surveillance team, Farlough put the "rock" in a manilla envelope on which he wrote the defendant's name and the date, time, and location of the purchase. Young field-tested the "rock" and found it positive for cocaine. Sometime later, Young returned the envelope to Farlough. Farlough placed the envelope in a file drawer where it remained until November 25, 1987. On that date, Farlough gave the envelope to Deputy Marry McClendon who then placed it in a safe. On March 18, 1988, she handed over the envelope to John Palm, a criminalist for the New Orleans Police Department. Palm analyzed the "rock" and found it positive for cocaine. Palm returned the envelope containing the cocaine to Deputy McClendon who kept it in the safe until trial.
The defendant denied being at JU's that night and denied ever having been in Plaquemines Parish.
A review of the record reveals no errors patent.
In his first assignment of error, the defendant complains that the trial court erred in denying his motions for mistrial. He argues that the State made an impermissible reference to "other crimes" evidence during cross-examination of defendant and during closing argument.
During the cross-examination of defendant about his job as a truck driver, the following transpired:
Q And when you do this do you come across individuals sometimes that are in the narcotics business?
A No, sir.
MR. NOBLE:
We are going to object to this line of questioning and ask that the jury be instructed to disregard the prior questioning.
MR. BALLAY:
This is a case of course of distribution of cocaine. One of the points the State is able to bring out is where in fact the cocaine is obtained from, and what is this defendant's ability and access to cocaine.
*814 THE COURT:
Just a moment. Mr. Penton, retire the jury a moment please.
Read back the last two questions before the objection. (At the time the court reporter read back the two previous questions before the objection.)
MR. NOBLE:
Your Honor, at this time we are going to move for a mistrial. The inflammatory remarks made by the District Attorney has prejudiced this jury by talking about narcotic transactions across the country. But the Bill of Information charges that on October 30, 1987 the transaction occurred. The District Attorney has brought in highly inflammatory remarks and we would ask for a mistrial. We feel that any precautionary instructions to the jury is insufficient.
THE COURT:
Anything further, Mr. Ballay?
MR. BALLAY:
Just our same argument as before, Judge.
THE COURT:
I am going to deny your motion for a mistrial. I am going to admonish the jury to disregard the last questions. I will sustain your objection to the question.
Later, during the State's closing argument, the following occurred:
Also the type of business that he is in, driving coast to coast an 18-wheeler and such. This allows easy access to the market like this
MR. NOBLE:
Your Honor, we will object to this line of argument, again he is talking about the coast to coast narcotics operation. This is highly inflammatory and I move for a mistrial.
THE COURT:
This mistrial is denied.
Ladies and Gentlemen of the jury, I remind you that the argument of Counsel is just that, it is argument, it is not evidence. You will decide what has been proven or not proven based on the evidence and testimony that you have seen and heard from the witness stand in the courtroom.
MR. NOBLE:
In the alternative, Your Honor, we would ask that the jury be given a cautionary instruction to disregard the Prosecutor's prior statement and to admonish him from refraining from such line of arguing.
THE COURT:
I have done all the instructing I am going to do on this issue. Proceed, Mr. Ballay.
MR. BALLAY:
So, Ladies and Gentlemen, I think, and as we note today, people have access to drugs in many different ways, occupations, professions, whatever.
C.Cr.P. art. 770 provided, in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The prosecutor's comments cannot be construed as a reference to other crimes allegedly committed by the defendant. The comments did not directly or indirectly accuse or implicate the defendant in other unrelated criminal activity. Compare State v. Benton, 482 So.2d 94 (La.App. 4th Cir.1986); State v. Smith, 470 So.2d 128 (La.App. 4th Cir.1985), reversed on other grounds 491 So.2d 641 (La.1986). Thus, under C.Cr.P. art. 771, the admonition to the jury to disregard the question was sufficient.
This assignment of error is without merit.
In his second assignment of error, the defendant complains that the trial court *815 erred in admitting into evidence State's Exhibit 2 and State's Exhibit 5 which were a traffic citation issued to the defendant and the defendant's driver's license. The defendant argues that this evidence was irrelevant because neither piece of evidence had any bearing or substantial value as to the facts of the case.
The prosecutor, during his cross-examination of the defendant, asked the defendant about traffic citations he had received in Plaquemines Parish in an effort to impeach the defendant's testimony that he had never been in the parish before. There was no objection by defense counsel to the defendant's being asked about the traffic citations or about his driver's license. There was no objection when the deputy who issued two of the citations testified. No objection was made until the prosecutor introduced into evidence one of the traffic citations and the defendant's driver's license. At that time, counsel for defendant objected on the grounds of relevancy.
C.E. art. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. C.E. art. 403.
The purpose of introducing the traffic citation and the driver's license was to impeach the defendant's credibility. Specifically, the evidence was used to impeach his testimony that he had never been in Plaquemines Parish. However, under C.E. art. 609.1, only criminal convictions can be used to attack credibility, and not matters where there has been an arrest, an arrest warrant issued, an indictment, a prosecution, or an acquittal. Hence, the traffic citation and driver's license were irrelevant and erroneously admitted into evidence. However, defendant was not prejudiced by their being admitted because of his failure to object to the extensive questioning of him on that point and to the testimony of the deputy who issued the citation. C.Cr.P. art. 921.
This assignment of error is without merit.
In his third assignment of error, the defendant argues that the State failed to prove his guilt beyond a reasonable doubt. He asserts that the cocaine tested by John Palm was not the same cocaine purchased by Farlough from defendant. He points to the fact that the cocaine sat in a filing cabinet and the lack of evidence that the filing cabinet was kept locked or who had access to it. Additionally, the defendant argues that failure of the confidential informant to testify means that it should be presumed the informant would have testified favorably to the defense. The defendant also refers to Farlough's identification of him as insufficient to prove guilty due to Farlough's inability to give details as to the defendant's clothing, height, weight, or any significant identifying feature.
The standard for reviewing a claim of insufficient evidence is whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). To convict the defendant for violating R.S. 40:967A(1), the State had to prove beyond a reasonable doubt that the defendant knowingly and intentionally distributed cocaine, a Schedule II drug. R.S. 40:964.
As to the question of whether the State proved that the cocaine introduced into evidence at trial was the cocaine purchased by Agent Farlough, the State had to prove that it was more probable than not, or by a preponderance of the evidence, that the cocaine was the object connected with the case. State v. Huber, 504 So.2d 644 (La.App. 4th Cir.1987). The State did not have to eliminate all possibilities that the evidence had not been altered.
The State sufficiently proved that the evidence had not been tampered with or *816 altered during the time it remained in the filing cabinet in which Agent Farlough had placed it prior to turning it over to deputy McClendon who kept it in a locked safe.
As to the failure of the State to call the confidential informant as a witness, the defendant contends that he is entitled to the presumption, as set forth in R.S. 15:432, that the informant would have testified adversely to the State. R.S. 15:432 provides that where evidence is under the control of a party and is not produced by him, there is a legal presumption that the evidence would not have aided that party.
The identity of the confidential informant was not revealed; and thus, the informant should be considered as under the control of the State. However, there is no indication in the record that the defendant requested that the trial judge instruct the jury on the presumption or that the jury was so instructed.
In State v. Humphries, 463 So.2d 804 (La.App.2d Cir.1985), the defendant contended there was insufficient evidence to support her drug conviction because of the State's failure to call two witnesses under its control. The Second Circuit held that even if the State's failure to call the witness entitled defendant to the presumption they would have testified contrarily to the State's case, the defendant was not entitled to its recognition on appeal because there was no indication in the record that the defendant had attempted to get that presumption before the jury. The defendant's failure to request a special instruction to the jury on the presumption provided no basis for complaint on appeal.
Similarly, in the present case, the defendant cannot avail himself of the presumption set forth in R.S. 15:432 because he failed to request that the jury be given such an instruction.
The defendant also attacks the sufficiency of the evidence by arguing that the State failed to negate the reasonable probability that he had been incorrectly identified by Agent Farlough. He points to Agent Farlough's failure to give details as to defendant's clothing, height, weight, or special or significant identifying features and to the fact that Agent Farlough testified that he had been involved in five undercover operations from July, 1987 to March, 1988. He further points to the agent's testimony that the lighting was only fair, that the transaction took only a short period of time, that the informant gave the agent defendant's name, and that defendant's photograph was obtained from the St. Bernard Parish Sheriff's Office. The defendant does not attack the actual admissibility of the identification but rather the weight to be given it in assessing the sufficiency of the evidence.
Viewing Agent Farlough's testimony as to his identification of the defendant in the light most favorable to the prosecution, it appears the State proved beyond a reasonable doubt that the defendant was the person who sold the cocaine to Agent Farlough. He identified the defendant in court as the perpetrator, and he testified that he recognized the defendant from a photograph.
The State proved the defendant's guilt of the crime of distribution of cocaine beyond a reasonable doubt.
This assignment of error is without merit.
In his fourth and final assignment of error, the defendant complains that the trial court erred in imposing an excessive sentence. He argues that he should have received a suspended sentence because the pre-sentence investigation report (P.S.I.) failed to show a felony or juvenile record. He further contends that even though the P.S.I. recommended against probation, the P.S.I. did not propose that there was undue risk he would commit another crime if he were given probation.
The P.S.I. indicates that defendant has no record as a juvenile, but it does show several arrests as an adult. The arrests include "threats to do bodily harm with a shotgun", simple burglary, disturbing the peace, auto theft, illegal possession of stolen property, aggravated assault, and simple battery. But these charges were either dismissed or resulted in acquittal, except *817 for the disturbing the peace charge to which defendant pleaded guilty. The P.S.I. recommended against probation in view of the serious nature of the offense, defendant's refusal to admit his guilt and stated that defendant would not respond affirmatively to probationary treatment. The P.S.I. further stated that defendant was in need of correctional treatment that could be most effectively provided by his commitment to an institution.
At the sentencing hearing, the trial judge noted the arrests of defendant as an adult and stated that these arrests indicated that defendant had not led a law-abiding life despite the acquittals and dismissals of the various charges. The judge stated that if the sentence were suspended, defendant would probably commit another crime or be involved in illegal activities and that the defendant was in need of correctional treatment or a custodial environment.
The judge also noted that the P.S.I. contained information concerning defendant's lifestyle and his ability to make a $20,000 down payment on a tractor-trailer rig and his driving a new BMW automobile when defendant claimed to be clearing only $300 per month as a truck driver. The judge stated that this fit the profile of someone involved in the drug culture. The judge further noted defendant's denial that he had ever been in lower Plaquemines Parish when several traffic tickets showed the contrary. The judge noted defendant's refusal to admit his guilt despite the compelling evidence of that guilt.
The trial judge went through the sentencing factors set forth in C.Cr.P. art. 894.1. Regarding factors relevant to probation, the judge stated that defendant's conduct threatened vast harm but that he was not sure that defendant was aware his conduct threatened harm. The judge found that defendant did not act under provocation and that there was no entrapment. The judge stated that defendant's social history and school records indicated a rebellion toward authority and that he did not respond well to rules and norms as to expected behavior. The judge found that from the arrest record defendant had not led a law-abiding existence for an extended period before the commission of the crime. The judge further found that it was extremely possible or probable defendant would be involved in crime and that there was nothing to contradict the recommendation against probation in the P.S.I.
The judge stated that there would be no undue hardship caused by defendant's imprisonment and that imprisonment would not cause needless pain or suffering. The trial judge then sentenced defendant to five years at hard labor.
The sentence for distribution of cocaine is not less than five years and not more than thirty years, and a fine of not more than $15,000 may be imposed. R.S. 40:967. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional rights against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it: 1) makes no measurable contribution to acceptable goals of punishment and is nothing more than the needless imposition of pain and suffering; and 2) is grossly out of proportion to the severity of the crime. State v. Telsee, 425 So.2d 1251 (La. 1983).
C.Cr.P. art. 894.1 sets forth sentencing guidelines to be followed so that the trial judge can tailor the sentence to the particular defendant and his particular crime; but it is not necessary that the judge recite all the factors in Article 894.1 as long as there is evidence in the record that the judge considered those factors and tailored the sentence to fit the defendant and his particular crime. State v. Welch, 550 So.2d 265 (La.App. 4th Cir.1989); State v. Nelson, 449 So.2d 161 (La.App. 4th Cir. 1984).
The trial judge in the present case fully articulated his reasons for sentencing defendant as he did, and the reasons given fully support the sentence of five years imprisonment. There is nothing to show that the trial judge abused his sentencing discretion by not suspending the sentence. Defendant's past history and the nature of the offense warrant the sentence imposed. This assignment of error is without merit.
*818 For the foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.