726 So.2d 1135 (1999)
STATE of Louisiana
v.
Donielle BANNISTER and Romalice McGhee
No. 97-KA-0048.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1999.
*1137 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, for Plaintiff-Appellee.
Raymond J. Brothers, Robert W. Maxwell, Pulaski, Geiger & Laborde, New Orleans, for Defendant, Donielle Bannister.
Donna M. Borrello, Robert E. Couhig, Jr., Adams and Reese, New Orleans, for Defendant, Romalice McGhee.
Court composed of, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III, and Judge Pro Tempore JAMES C. GULOTTA.
WALTZER, J.
Donnielle Bannister and Romalice McGhee, defendants, complain that the evidence introduced at their trial did not support their convictions for attempted murder and attempted armed robbery. Moreover, they argue that errors at trial prejudiced the process.

STATEMENT OF THE CASE
The defendants, with co-defendant Robert Trackling, were charged by bill of information with attempted second degree murder, La. R.S. 14:27(30.1), and attempted armed robbery, La. R.S. 14:27(64). They pled not guilty. After a three-day trial, a twelve member jury found all defendants guilty of the charges. On 20 June 1996, McGhee filed a motion for post verdict judgment of acquittal. On 25 June 1996, Bannister and McGhee filed motions for new trial and in arrest of judgment. On 2 July 1996, the trial court denied Bannister's motions. The trial court sentenced Bannister to fifty years at hard labor without benefit of parole, probation or suspension of sentence on the attempted second degree murder, and fortynine years at hard labor without benefit of parole, probation or suspension of sentence on the attempted armed robbery. The trial court ordered the sentences to run consecutively.
The trial court denied McGhee's motions on 2 August 1996. On 20 December, 1996, the trial court sentenced him to twelve years at hard labor without benefit of parole, probation or suspension of sentence on the attempted second degree murder and twelve years at hard labor without benefit of parole, probation or suspension of sentence on the attempted armed robbery and ordered these sentences be served concurrently.

ERRORS PATENT
A review of the record for errors patent reveals two. McGhee filed his motion for appeal before sentencing, which motion the trial court immediately granted. Although a defendant can take an appeal only from a conviction and sentence, we will not *1138 dismiss an appeal taken prior to sentencing because such a dismissal of "the appeal would simply result in a delay of the appellate process and hinder defendant's right to appeal." State v. Warren, 538 So.2d 1036, 1037 (La.App. 4 Cir.1989). This error is harmless.
The trial court erred by imposing defendants' sentences for attempted second degree murder without benefit of probation, parole, or suspension of sentence. At the time of the offense in May 1995, La.R.S. 14:27(D)(1) provided that if the attempted offense was punishable by death or life imprisonment, as is second degree murder, the defendant was to be imprisoned at hard labor for not more than fifty years. The statute was amended in 1995 to provide that the sentence was to be without benefit of probation, parole, or suspension of sentence. Because the offense was committed prior to the amendment, we must amend defendants' sentences to delete the denial of the benefit of probation, parole, or suspension of sentence.

FACTS
Carol "Piggy" Frith, fourteen, testified that on 6 May 1995, she was walking on Aline Street with friends Ronesha, Cory, and Melvin, and her stepbrother, Jay. Jay was in front of her, and her friends were behind. A red four door car with black tinted windows pulled up. She thought it was someone she knew. She was standing on the passenger side of the car, and the front passenger window rolled down. The man in the front seat pulled off a black ski mask he was wearing, and she could see that it was Bannister. He pulled a gun and snatched a necklace that she was wearing from her neck. She began to walk back from the car. He then pulled a gun, stepped out of the car, and shot her in the throat. She described him as a black man, dark skinned, wearing a beard and a white tank top, with gold teeth. She could not see the driver or anyone seated in the back seat. She was in the hospital for a month. Later, a police officer came to her house and showed her three sets of pictures. She chose the picture of Bannister. At trial, she identified Bannister, the necklace (which was broken), and a pair of earrings she had been wearing.
Officer Djuana Adams said that she was at home on Aline Street when she heard a loud pop. She opened the door to find the victim shot. She saw a black "Z-28" or "Camaro-type" vehicle and could discern the silhouette of a person. She placed a description of the black car on the police radio and called for medical assistance. However, the driver of the black car, Larry Lawrence, later appeared on the scene. He saw the crime and had followed the car containing the perpetrators. Adams then changed the description of the vehicle used in the crime, based on the description given by Lawrence, which description included "maroon" with a temporary tag. The jury listened to the tape of the dispatch.
Lawrence testified that he was driving a black Nissan 240 on Aline Street on the way to visit a friend when he saw three black men in a burgundy car shoot a little girl. At first, he saw the car come to a stop and four or five children approach it. He saw the children running away, and he saw that Frith was injured. He chased the car for four or five blocks. He described it as a small burgundy four door car with a temporary license plate. He came back to the scene, and at first people approached him thinking he was the perpetrator, but then a man on the scene corrected the mistake. He reported what he saw, including the fact that the shooter was wearing a white tank top. He said that from his perspective it appeared that the shooter was in the back seat, seated on the passenger side. Lawrence left the scene, but the police dispatcher paged him and asked him to return to the scene. He then identified the maroon car with the temporary license plate, and a white tank top he had seen.
Officer Jimmy Slack testified that he answered a dispatch and went to the scene of the shooting. He spoke to Lawrence, and recovered the chain and earrings worn by the victim. He spoke to witnesses on the scene, *1139 and obtained a description of a maroon four door vehicle with tinted glass windows, occupied by three black males. About twenty to twenty-five minutes later, he heard from two officers that they had spotted the car at Washington Avenue and Magazine Street. Slack went to the scene where the suspects were apprehended. He brought Jay Everett Harris, stepbrother of the victim, to that location where Harris identified the car. Slack had the dispatcher page Lawrence, who arrived on the scene, and identified the car and the tank top. Slack identified Bannister as the man wearing the tank top.
Officer Ronald Thomas testified that he received the description of a red four door car occupied by three black males when he was riding in a marked car at Washington Avenue and Magazine Street. Two men were seated in the car, and a third was on the telephone. The third man returned to the car and got into the driver's seat and began to drive away. The officers pulled up to the intersection, as did the perpetrators. The officers motioned for the men to go first, and the driver of the other car did the same. The suspects' car proceeded first, and then one or two cars got between that car and the officers' car. At that point, the driver of the other car began to flee. The officers put on the lights and siren and a chase ensued. Eventually as many as eight police cars joined in the pursuit and were successful in stopping the suspects. The men were ordered out of the car. Bannister, wearing a white shirt and blue jeans, got out of the front passenger seat, Trackling out of the driver's seat, and McGhee out of the back seat.
James Druitt said he was outside a friend's house on Aline Street when he heard the gunshot. He went to the front of the house and saw a maroon four door mid-size car speeding away. Three men were in the car. Another car came down the street, and Druitt asked the man, Lawrence, to follow the maroon car to obtain the license plate number. The man did and later returned to the scene.
The parties stipulated that Trackling owned the car.
Officer Stephen Williams said he compiled three photographic lineups, each containing a picture of one of the defendants. He showed them to Lawrence, but he was unable to make an identification. He showed them to Frith, and she was unable to identify Trackling or McGhee, but immediately identified Bannister as the gunman.
Harris, the victim's stepbrother, testified he was walking ahead of her when he heard a gunshot. He ducked behind a car, then returned to the scene to find that his stepsister had been shot. He saw a maroon Grand Prix with a broken window drive away. From there, officers took him to "where they found the guns." The district attorney then asked what happened when he was brought to the scene where the car was located, and he said that he identified the car.

FIRST ASSIGNMENT OF ERROR (Bannister):
Bannister argues the evidence did not support his convictions, and the trial court erred in denying his motion for post verdict judgment of acquittal. In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the *1140 fundamental protection of due process of law. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
La. R.S. 14:30.1 defines second degree murder, in pertinent part, as "the killing of a human being: 1) when the offender has a specific intent to kill." La. R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by force or intimidation, while armed with a dangerous weapon." Attempt is defined as "having specific intent to commit a crime and doing or omitting an act for the purpose of and tending directly toward the accomplishing of his object." La. R.S. 14:27.
In this case, there is no question that the perpetrator(s) committed attempted second degree murder. The victim was shot at close range. Likewise, there is no question that the perpetrator(s) attempted an armed robbery. The necklace, a thing of value, was taken from the victim's neck with the gun pointed at her. The defendants argue neither point. However, they argue a case of mistaken identity.
The victim in this case identified Bannister in a photographic lineup and again at trial. She was confidant of her identification, and there is no suggestion that the identification procedure was in any way suggestive or that the identification was coerced. The jury obviously believed the victim, and as stated above, a reviewing court is not called upon to decide whether it believes the witnesses. State v. Mussall, supra. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La. App. 4 Cir.1989). In addition, other factors point to Bannister as the shooter. Bannister was apprehended, wearing a white shirt identified by other witnesses at the scene of the shooting, a short distance from the crimes. He was a passenger in a car described by witnesses at the scene, and three black men, as described by the witnesses occupied the car. He and the co-defendants attempted to flee when they saw the marked police car, and a chase ensued. Accordingly, the evidence identifying Bannister as the perpetrator is sufficient to support the convictions.

SECOND ASSIGNMENT OF ERROR (Bannister):
Bannister argues the trial court erred in several trial rulings and in denying his motion for new trial. He argues that the trial court erred in denying his motion for mistrial, made after the victim's brother referred to the "guns." At trial, this witness was explaining that he went to get the victim's mother after the victim was shot and stayed at the mother's house until officers came to get him, about fifteen minutes later, when he returned to the crime scene. Then the assistant district attorney asked him, "What happened then?" He answered, "From there, two officers asked me, was I Michael. Because he must have had got into an altercation earlier that day with someone. And ___ I think it was Officer Slack, put me in his patrol car. And I stood in there, and he asked me a few questions. From there, we went to..." The prosecutor said, "To another location?" The witness replied, "We went to where they found the guns. Where the guns was at." The three defense counsel objected and later moved for mistrial.
The trial court stated that the comment was muffled and that he did not believe the jury heard the reference. The trial court noted that the trial was in its third day when the witness commented on the suppressed evidence, the guns. Counsel for Bannister then stated that he had filed a motion in limine seeking to have evidence of the recovered guns excluded because no gun was found to be the weapon used in this crime, and that accordingly, evidence of the recovered guns was irrelevant in that it was more prejudicial than probative. Counsel stated that the trial court granted the motion, that the State had taken writs to this court, State *1141 v. Bannister, et al., 96-1315 (La.App. 4 Cir. 6/5/96), unpub., then to the Louisiana Supreme Court, State v. Bannister, et al., 96-1404 (La.6/7/96), unpub., and that both courts had denied writs. The trial court denied the motion for mistrial. Defense counsel then asked that the trial court not admonish the jury on the ground that an admonishment would underscore the evidence. The State asked that the jury be admonished, arguing that the State did not elicit the testimony. The trial court did not admonish the jury.
La.C.Cr.P. art. 771 provides, in part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.[1]
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Manuel, 94-0087 and 94-0088, p. 3 (La.App. 4 Cir. 11/30/94), 646 So.2d 489, 491, this court noted:
The decision to grant a mistrial is discretionary and is appropriate only when an admonishment cannot cure the error. State v. Goods, 403 So.2d 1205 (La.1981). A mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to the defendant which effectively deprives him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982).
A mistrial based on a remark or a comment of a witness is at the discretion of the trial court and should be granted only where prejudicial remarks of a witness make it impossible for a defendant to obtain a fair trial. State v. Smith, 418 So.2d 515 (La.1982).
The State did not elicit the testimony. The prosecutor, in questioning this young witness about the location of his identification of the car used in the crimes, inadvertently elicited the objectionable testimony. There is absolutely no suggestion that the State intended for Harris to testify the suppressed evidence, "the guns." In addition, the State argued for an admonishment, and the defendants objected.
Moreover, it is difficult to see how the comment prejudiced the defendant. No evidence at trial tied Bannister to the elusive "guns" referred to by Harris. No other witness testified about these guns. The witness' comment in no way strengthened the State's case against Bannister.
The defendant also complains of the polling of the jury. Verdict sheets were passed out to the jury regarding the attempted second degree murder charge as to each defendant, and the judge instructed that if it was each individual juror's verdict that the defendant be found guilty as charged, the juror was to write yes and sign his name, if not, no. After the jury polling, the court found that there was not a legal verdict. The judge then said that he would instruct the jury again. A juror then interrupted: "I have the tally right here.... You all have to vote the same way ___ you all voted upstairs." The court then stopped the juror. The defense objected, and the trial court sustained the objection. The judge again advised the jurors that each individual person was entitled to his own verdict. He again read the verdict sheet and gave the same instruction in explicit terms. The jury was polled, and a bench conference ensued. The judge instructed the jury, and again a bench conference ensued. The jury was polled a third time, and the judge found a legal verdict.
*1142 The State argues in response to the defendant's argument that there was no contemporaneous objection such that the issue cannot be raised on appeal. La.C.Cr.P. art. 841. However, given the several bench conferences and obviously thorough argument on point, we presume an objection.
The procedure for the written polling of the jury is set forth in La.C.Cr.P. art. 812(2), which provides:
The procedure for the written polling of the jury shall require that the clerk hand each juror a separate piece of paper containing the name of the juror and the words, "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with the signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results. If a sufficient number of jurors as required by the law to reach a verdict answer "yes" the clerk shall so inform the court. Upon verification of the results, the court shall order the clerk to record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer "Yes," the court may remand the jury for further deliberation, or the court may declare a mistrial in accordance with Article 775.
In State v. Valenzuela, 590 So.2d 89 (La. App. 4 Cir.1991), after giving the jury instructions and prior to deliberations, the trial judge gave the jury a verdict sheet and a poll sheet with the question "Is this your verdict," on which each individual juror could individually check "Yes" of "No" in the space provided and sign their names. After the jury returned with their verdict of guilty and with the polling sheet with six "yeses" checked, defense counsel objected to the polling method and moved for an oral polling, which motion was denied. The defendant argued that the trial court's method of polling the jury did not comply with the requirements of LSA-C.Cr.P. art. 812 and undermined his right to a fair trial. He claimed that the judge's method undermined the function the jury serves to protect a defendant against a pressured verdict in the jury room by giving the juror an opportunity to individually assert his own conscientious agreement or disagreement with his fellow jurors in the open courtroom free of any coercive browbeating. Bannister makes a similar argument.
The Valenzuela court cited State v. Williams, 536 So.2d 773, 777 (La.App. 5 Cir. 1988) in which "there was `some sort of poll taken,' there was evidence that the jury poll did not comply with statutory requirements, and the record contained no statement as to the result of the polling." This court found, as did the Fifth Circuit, that the error was harmless because there was no allegation of prejudice and the polling did in fact record the verdict of the jurors.
Here, although there may have been technical non-compliance in not sending the jury back for further deliberations after confusion in the polling, any error was harmless. There is no suggestion that the juror's remark: "You all have to vote the same way you voted upstairs" in any way influenced any juror to change his vote. Evidently, there simply was confusion amongst the jurors about how to sign the sheets.
Bannister argues that the trial court erred in giving hypothetical situations to the jury in its jury charge. Defendant did not object, and he cannot raise the issue for the first time on appeal. La.C.Cr.P. art. 841. Furthermore, a reading of the jury charges reveals no error.
Accordingly, Bannister's sentence for attempted second degree murder is amended to delete the denial of the benefit of probation, parole, or suspension of sentence.

FIRST AND SECOND ASSIGNMENTS OF ERROR (McGhee):
McGhee argues the evidence was insufficient to support his conviction and the trial court erred in denying his motions for post verdict judgment of acquittal and for new trial. When circumstantial evidence forms the basis of the conviction, such evidence *1143 must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This question is not a separate test from Jackson v. Virginia, but it is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). In cases relying on circumstantial evidence, the reviewing court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, the reviewing court, while evaluating the evidence in a light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable and whether a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied Davis v. Louisiana, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
When the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Jones, 94-1098 (La.App. 1 Cir. 6/23/95), 658 So.2d 307, writ denied, 95-2280 (La.1/12/96), 666 So.2d 320; State v. Richardson, 459 So.2d 31, 38 (La.App. 1 Cir.1984).
We must consider whether the evidence in the record suggests that McGhee did not participate in the crimes. The police apprehended McGhee, and his co-defendants, a short time after the shooting. Police officers saw Bannister, McGhee and Trackling approximately twenty minutes after the crimes. Furthermore, the police spotted the defendants in a stationary position a short distance from the crime scene. Moreover, the defendants, including McGhee, attempted to flee from the police. The police arrested three black men, including McGhee, in a maroon car with temporary tags thirty minutes after the crimes a short distance from the scene. The driver owned the car used in the crimes. Several witnesses reported that three black men participated in the crimes. The victim identified the shooter, Bannister, but she was unable to identify the other men involved in the crime. We find no evidence in the record suggesting McGhee's innocence. Moreover, we find the evidence, although circumstantial, sufficiently supports McGhee's convictions. However, as discussed above, the sentence, imposed for the conviction of attempted second-degree murder, does not comply with the statute as it existed at the time of the offense. Accordingly, we amend his sentence for attempted second degree murder to delete the denial of the benefit of probation, parole, or suspension of sentence. Otherwise, McGhee's convictions and sentence are affirmed.

CONCLUSION
For the above reasons, we affirm Bannister's convictions for attempted second degree murder and attempted armed robbery. We amend his sentence for attempted second degree murder to delete the denial of the benefit of probation, parole and suspension of sentence. In all other respects his sentence is affirmed.
We affirm McGhee's convictions for attempted second degree murder and attempted armed robbery. We also amend his sentence for attempted second degree murder to delete the denial of the benefit of probation, parole and suspension of sentence. In all other respects his sentence is affirmed.
CONVICTIONS AFFIRMED, SENTENCES AMENDED IN PART.
NOTES
[1] Art. 770 concerns comments by a judge, district attorney, or court official concerning race, religion, color, national origin, another crime committed by the defendant about which evidence is not admissible, the failure of the defendant to testify, or the refusal of the judge to direct a verdict.