761 So.2d 125 (2000)
STATE of Louisiana
v.
Leroy "June" JAMES.
No. 99-1858.
Court of Appeal of Louisiana, Third Circuit.
May 3, 2000.
*127 Mr. Van H. Kyzar, Jimmy D. Long, Jr., District Attorney's Office, Natchitoches, LA, Counsel for the State.
Vincent C. Cofield, Natchitoches, LA, Counsel for Defendant.
(Court composed of JOHN D. SAUNDERS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.)
SULLIVAN, Judge.
On December 18, 1998, the State filed a bill of information charging Defendant, Leroy "June" James, with unauthorized entry of an inhabited dwelling, a violation of La.R.S. 14:62.3; second degree battery, a violation of La.R.S. 14:34.1; and attempted second degree murder, a violation of La. R.S. 14:30.1 and 14:27. On June 22, 1999, a six-person jury found Defendant guilty of unauthorized entry of an inhabited dwelling and second degree battery. The record does not reveal the disposition of the attempted second degree murder charge. After denying Defendant's motion for a new trial on July 14, 1999, the trial court sentenced Defendant to five years at hard labor on each charge, with the sentences to run concurrently. On appeal, Defendant assigns six errors.

Facts
The victim, Shirley Remo, testified that she was attacked in her home shortly after her family members, including her husband, had left a gathering that she hosted on Thanksgiving Day, November 26, 1998. According to the victim, she realized that an intruder was in her home when she heard someone "tiptoeing" in her hallway. She initially grabbed her cordless telephone to call for help, but when the footsteps stopped after the telephone "beeped," she decided to hide behind her bedroom door with a small camping knife for defense. She testified that through the crack in the doorway, she saw Defendant, whom she recognized as her neighbor's boyfriend. The victim then described a struggle in which Defendant pinned her down, choked her, and beat her in the face with the cordless telephone. During the attack, the victim noticed that a clock showed the time as 8:25 p.m. The victim was soon able to free herself, at which time Defendant expressed surprise and left. The victim then called her sister, Linda Robinson, who arrived at her home about twenty minutes later and convinced her to seek medical attention. While waiting for her sister, the victim remained on the telephone with her brother-in-law because she feared that Defendant would return. Later that evening, Deputy Brian Powell, of the Natchitoches Parish Sheriff's Office, met the victim at a local hospital, where he recorded her complaint and took photographs to document her injuries.
The victim testified that during the attack Defendant said that he intended to kill her because of what she had done to his girlfriend. The victim believed Defendant was referring to a complaint that she had made to the housing authorities about his girlfriend's Rottweiler dogs running loose. Rhonda Kay, an employee of the Natchitoches Parish Housing Authority, confirmed that Defendant's girlfriend lost her public housing assistance as a result of this complaint.
Defendant presented the testimony of two alibi witnesses. Leonard Maxim testified that Defendant was at his home from about 5:00 p.m. on Thanksgiving evening until 6:00 a.m. the following morning. David Charles Dixon testified that he dropped off Defendant at Maxim's home that evening then picked him up the following morning to go to work. Dixon also testified that he knew the victim and that he overheard a conversation in which the victim stated that she had to stay in her home for a week because of an argument with her husband.

*128 Sufficiency of the Evidence
In his second and third assignments of error. Defendant argues that the jury verdict was contrary to the evidence adduced at trial and that the evidence was insufficient to support the two convictions beyond a reasonable doubt. For the reasons expressed in State v. Hearold, 603 So.2d 731 (La.1992), we will address these assignments first, as they both concern the sufficiency of the evidence. On appeal, the standard of review is whether a reasonable trier of fact could have found that the State proved the elements of each offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Defendant was convicted of unauthorized entry of an inhabited dwelling, which is defined in La.R.S. 14:62.3(A) as follows:
Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
Defendant was also convicted of second degree battery, which is defined in La.R.S. 14:34.1 as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
On appeal, Defendant does not argue that the State failed to prove any one element of these offenses. Rather, he contends that the jury unreasonably rejected the testimony of his alibi witnesses in light of several inconsistencies in the victim's testimony. For example, the victim testified that when she hid behind the door, she held a cordless telephone in her hand, but she also stated that Defendant found her behind the door by following a telephone cord. The victim claimed that her injuries included a fractured eye socket and a broken nose, but the medical report from the hospital stated that the victim did not sustain a fracture of the facial bones. Also, in her original statement to police, the victim said that when she heard "tiptoeing" in the house, she immediately realized it was not a family member. On the stand, however, she testified that she at first thought her husband had returned, but she soon realized that his cowboy boots would be inconsistent with "tiptoeing." Finally, Defendant argues that the victim's testimony that her brother called to check on her and that she spoke with her brother-in-law on the telephone after the attack is inconsistent with the testimony of her husband, Willis Remo, who stated that he left the Thanksgiving gathering with his brother and the victim's brother and did not return until the next morning.
We find that these inconsistencies do not seriously question the victim's credibility. In addition to noting that many "cordless" telephones have cords leading to their bases, we also point out that the victim could only assume that Defendant found her by following a telephone cord. From the victim's testimony, it appears that Defendant was also aided by the "beep" from the telephone. Although the victim mistakenly testified that her nose was broken, the photographs in evidence reveal several facial injuries, and the medical records document bruises to both eye sockets as well as a referral to the oral surgery clinic at LSU. The last notation is consistent with the victim's testimony that she was "sent" to Shreveport because of possible damage to her eye sockets.
Concerning the confusion about the whether the victim spoke on the telephone with her brother and/or her brother-in-law, we find no contradiction between the victim's testimony and that of her husband. *129 The victim testified that her brother called to check on her twice before the attack and that she "stayed" with her brother-in-law on the telephone after the attack while waiting for her sister to arrive. The victim's husband testified that he left his home with his brother and his wife's brother. From the context of this testimony, it appears that the victim remained on the telephone with her sister's husband, identified as William Joseph Robinson, whereas her husband's brother, who would also be the victim's brother-in-law, was with her husband.
It is well-settled that the victim's credibility is a matter for the fact finder to assess, and that the appellate courts will not second-guess such assessments, absent manifest error. State v. Bourque, 94-291 (La.App. 3 Cir. 11/2/94); 649 So.2d 670. In Bourque, we did overturn such an assessment, but only where the defendant presented credible alibi testimony in the face of questionable eye-witness testimony. (The only witnesses to the crime were a child and an adult who had consumed a large amount of alcohol before witnessing the incident.) In the present case, the victim was not a weak witness. She positively identified Defendant as her attacker, and she presented a motive with underlying facts that were confirmed at trial.
These assignments of error lack merit.

Polling of the Jury
In his first assignment of error, Defendant argues that the trial court erred in interrogating a juror regarding her "no" vote during the written polling of the jury, in violation of La.Code Crim.P. art. 812. The State responds that defense counsel failed to make a contemporaneous objection to the trial court's polling procedure and, alternatively, that any error was harmless.
At the close of deliberations, the six-person jury presented its verdict forms for each charge. The trial court then ordered that the jury be polled in writing. On the charge of unauthorized entry of an inhabited dwelling, the written poll revealed a unanimous vote for conviction. On the charge of second degree battery, however, Juror Braden, indicated on her polling card that she did not vote to convict. Under La.Code Crim.P. art 782(A), the concurrence of all six jurors is required to render a verdict in this case.
The trial court then questioned Juror Braden as follows:
Q. And this is not to put any stress on you. It's an unusual situation. My question to you is on the second group of cards which concerns the Second Degree Battery charge.
A. Yes, sir.
Q. The jury verdict form which I am showing you in court signed by the Foreman, Patrice C. Trichell says, We the jury find the accused guilty. And it's written in long form on the back and signed by Ms. Trichell and dated today.
A. Yes, sir.
Q. I have asked all of the jurors to complete this card and write out was that their verdict. Did they concur with that verdict at the time the vote was reached as a yes or a no. And your card said no.
A. Yes, sir.
Q. Is that correct?
A. Yes, sir.
Q. Alright. At the time that ya'll a [sic] took a vote on the guilty of Second Degree Battery you voted no?

A. No. We talked about it and ...
. . . .
A. We talked about it and I felt like there was no proof saying that he actually did do it. But I felt out voted, so that's why we agreed on the yes.

Q. Okay. And at the conclusion of your deliberation and votes did you eventually vote yes, then?

A. Yes, sir.

Q. And I'm not trying to talk you into anything.
A. Yes, sir.

*130 Q. I want to know at what point in time if you did or if you didn't ...
A. Yes, sir.
Q. ...concur with the jury verdict vote. I want that noted.
A. Yes, sir.
Q. So, in preliminary discussions and please, it's unusual and I don't want to misstate anything for the record. Do I understand that in preliminary discussion that you disagreed for the record and now, at this point when ya'll finally voted you had stated yes, is that right?

A. Yes, sir.

Q. Okay.
THE COURT: I'll let that be noted for the record. And thank you very much. You can have a seat. I'm going to order that the jury polling cards be sealed and made a part of the record. Be put in an envelope along with the ... not sealed, but made part of the record with the responsive verdict forms.
(Emphasis added.)
La.Code Crim.P. art. 812(2) (emphasis added) provides in part:
The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results. If a sufficient number of jurors as required by law to reach a verdict answer "yes" the clerk shall so inform the court. Upon verification of the results, the court shall order the clerk to record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer "Yes," the court may remand the jury for further deliberation, or the court may declare a mistrial in accordance with Article 775.

The trial court did not comply with this article because it questioned one juror in open court rather than remanding the entire panel for further deliberation or declaring a mistrial. The appellate record contains an incomplete transcript of the trial court proceedings, but a minute entry indicates that a bench conference was held immediately before Juror Braden was interrogated and that defense counsel later objected to the verdict as illegal. In State v. Bannister, 97-48, p. 11 (La.App. 4 Cir. 1/27/99); 726 So.2d 1135, 1142, the appellate court presumed that defense counsel had entered a contemporaneous objection to the trial court's improper polling procedures, "given the several bench conferences and obviously thorough argument on point." Similarly, we find that present defense counsel adequately preserved this issue for appellate review.
In Bannister, 726 So.2d at 1141, the trial court determined that the results of a written poll did not reflect a legal verdict, at which time a juror blurted out, "I have the tally right here ... you all have to vote the same wayyou all voted upstairs." The trial court stopped that juror, repeated its instructions, and polled the entire panel again. After two bench conferences, the trial court polled the jury a third time before it pronounced a legal verdict. The appellate court noted the error of not returning the panel for deliberation, but found it harmless, as the record did not indicate that the comments of the juror influenced any of the others to change their votes. In State v. Amato, 96-606 (La.App. 1 Cir. 6/30/97); 698 So.2d 972, writ denied, 97-2626 (La.2/20/98); 709 So.2d 772, one juror wrote "no" on a written ballot, but after questioning from the trial court stated that he probably misunderstood the written form and that he meant to respond "yes." Additionally, the jury foreman stated that the vote was unanimous at the time the verdict was reached. The appellate court found no error where "the record show[ed] beyond *131 a reasonable doubt that the verdict on Count 1 was unanimous." Id. at 688-89.
In the present case, Juror Braden readily admitted that she voted to convict during deliberations. Although she may have initially expressed some doubt, she changed her mind and voted with the majority. The record does not reveal that she was pressured into changing her vote, other than she was "out voted." Although proper procedure would have been to remand for further deliberation, we do not find that noncompliance with Article 812 was reversible error in this case. By questioning Juror Braden, the trial court did determine that all six jurors voted to convict Defendant of second degree battery.
This assignment of error lacks merit.

Jury Instructions
In his final three assignments of error, Defendant contends that the trial court's jury instructions were biased, prejudicial, and incomplete. He argues that the trial court erred in failing to instruct the jury on his alibi defense and on the negative inference of La.R.S. 15:432 that allegedly resulted from the State's failure to call the victim's brother and brother-in-law as witnesses and to introduce the weapon of the crime, the cordless telephone.
At the hearing on Defendant's motion for new trial, the following colloquy took place regarding the alibi instructions:
MR. HARRINGTON [for the State]:... The defendant alleges that the Court had an obligation to instruct the jury about an alibi defense. He knew that he was putting on alibi defense. We met in Chambers, went over all of the jury instructions and the Court asked him if he wanted to submit any other instructions or take any out. We took some out. He didn't mention anything about wanting to have an alibi defense instruction. And that was his duty to do that and he did not do so.
THE COURT: Alright. I'm going to address this in three matters. One, was a new matter not mentioned in your motion, Mr. Cofield [the defense attorney], concerning the alibi instruction. As I do in every criminal case, I prepare a proposed criminal jury instructions, supply them to the defense counsel and District Attorney well in advance of the conclusion of the trial. With recommendations for any objections for those that I proposed or any other additional jury instructions that you have. And advise counsel that we will have a conference on the instructions which we had in this case. Also, notified both counsel, if you had any objection to any of the jury instructions being included or excluded that you may want or that those I had proposed, we wanted to do that on the record outside the presence of the jury. And no objection was given to any of the instructions by defense counsel or by the State. You're [sic] objection concerning your alibi instruction is denied. And, in fact, it's without merit because it was not included in your motion.
Although the jury instructions were not transcribed in the appellate record, the above colloquy demonstrates that defense counsel failed to object to the trial court's proposed jury instructions. As La.Code Crim.P. art. 801 provides in part:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
Having failed to timely request an alibi instruction, Defendant could not raise that issue in his motion for new trial after the jury had been released. Likewise, Defendant may not raise it here. See State v. Dugar, 93-718 (La.App. 3 Cir. 10/5/94); *132 643 So.2d 870, writ denied, 94-2712 (La.6/30/95); 657 So.2d 1019 (citing State v. Marcell, 320 So.2d 195 (La.1975)).
Defendant also argues that the trial court should have instructed the jury that it could infer that the victim's brother and brother-in-law would have testified adversely to the prosecution, given the State's failure to call them as witnesses. The inference at issue is codified in La. R.S. 15:432, which provides in part:
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him; ....
(Emphasis added.)
In State v. Cargo, 593 So.2d 811 (La. App. 4 Cir.1992), the court refused to apply the above presumption to infer that a confidential informant would have testified adversely the State, where there was no indication in the record that the defendant requested the trial court to so instruct the jury. Given the trial court's statement that defense counsel did not make any objection to the proposed jury charges, we find Defendant may not now raise this issue. Additionally, the record contains no indication that the victim's brother and brother-in-law were under the control of the State. See State in Interest of J.G., 94-194 (La.App. 5 Cir. 7/26/94); 641 So.2d 633; State v. Jackson, 527 So.2d 1039 (La. App. 5 Cir.1988).
These assignments of error lack merit.

Errors Patent
In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we have found two.
First, the record indicates a possible error regarding the number of verdicts returned by the jury. Defendant was charged by a single bill of information with one count of unauthorized entry of an inhabited dwelling, one count of second degree battery, and one count of attempted second degree murder. When the clerk of court read the charges to the jury, however, he did not read the attempted second degree murder charge, and the jury returned a verdict only on the unauthorized entry and second degree battery charges. Defendant states in his appellate brief that the bill of information was amended, but no amendment appears in the record. In response to two information requests from this court, the deputy clerk of the district court certified that the record did not contain a minute entry, amendment, order or discussion showing the disposition of the outstanding charge. Consequently, we are unable to determine the disposition of the charge of attempted second degree murder.
La.Code Crim.P. art. 819 provides: "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." Facing a similar error patent in State v. Davis, 614 So.2d 270 (La.App. 3 Cir.1993), reversed on other grounds, 93-599 (La.4/11/94); 634 So.2d 1168, this court remanded for a proper disposition of the outstanding charge. Similarly, we find that the case should be remanded for a disposition of the attempted second degree murder charge.
Second, the minutes of sentencing do not indicate that Defendant was informed of the prescriptive period for filing post-conviction relief as required by La. Code Crim.P. art. 930.8, and the record does not contain a transcript of the sentencing colloquy. Accordingly, we will remand the case with instructions that the trial court determine whether Defendant was so informed, and, if he was not, the trial court is directed to inform Defendant per the procedure in State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

*133 Decree
For the above reasons, Defendant's convictions and sentences are affirmed, but the case is remanded for a disposition of the charge of attempted second degree murder. The trial court is also instructed to determine whether Defendant was informed of the prescriptive period for post-conviction relief under La.Code Crim.P. art. 930.8, and to do so if the record reveals that Defendant was not so informed.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.