877 So.2d 1135 (2004)
STATE of Louisiana
v.
Marcel McCLAIN.
No. 04-KA-98.
Court of Appeal of Louisiana, Fifth Circuit.
June 29, 2004.
*1137 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Jackie Maloney, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Martin E. Regan, Jr., Kristen A. Moe, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
SOL GOTHARD, Judge.
Defendant, Marcel McClain, appeals his conviction and sentence on a charge of indecent behavior with a juvenile in violation of La. R.S. 14:81. Defendant was tried by a jury for the charged crime and found guilty. He was sentenced to five years at hard labor which was suspended in favor of five years of active probation. In addition to the general conditions of probation, defendant was ordered to register as a sex offender and pay a $5,000.00 fine.

FACTS
According to the facts contained in the record, on June 3, 2002, K.T.[1], age twelve, lived with her mother (M.T.), brother and sister at a town home in Metairie.[2] K.T. was upstairs watching television when her sister came upstairs and announced defendant was there. Defendant was dating M.T. and had come to pick up his daughter, McKenzie, who was also at the residence.
According to K.T.'s taped interview with Omalee Gordon at the Children's Advocacy Center (CAC), given ten days after the incident on June 13, 2002, she and her sister were lying down under a blanket *1138 when defendant came upstairs. Defendant tickled K.T.'s sister and asked K.T. how she was doing. Defendant then reclined under the covers with K.T. and her sister and began rubbing K.T.'s stomach with his hand. Defendant asked K.T. if she liked it when the boys rubbed her stomach to which K.T. replied no. Defendant next rubbed K.T.'s breasts. He shifted her bra to the side and rubbed his hand on the skin of her breasts. He again asked K.T. if she liked it when the boys did the same thing. K.T. replied that she did not. Defendant grabbed K.T.'s pubic area on top of her clothes and repeated the same question. K.T. again answered that she did not. Thereafter, defendant tried to unbutton K.T.'s pants. K.T. told defendant to stop at which time his daughter came into the room followed shortly thereafter by K.T.'s mother. K.T. stated that defendant immediately stopped and quickly shifted his position away from her. K.T. then left the room to get her shoes because she had to go with her mother to pick up her grandmother from a concert.
During the CAC's taped interview, K.T. stated she was upset after the incident and did not know how to tell her parents what had happened. K.T. eventually told her grandmother later that night after they returned home. K.T.'s grandmother testified at trial that K.T. told her defendant had touched her. K.T.'s grandmother could not remember exactly where defendant had touched K.T. but stated she knew it was in the area of the front part of the body. K.T.'s grandmother then told K.T.'s mother who called the police and K.T.'s father.
At trial, K.T. stated that she could not remember anything about the incident that occurred on June 3, 2002. She expressed anger about having to testify at trial claiming she was told she would not have to take the stand. K.T. would only state that she remembered watching television with her little sister and then going to pick up her grandmother. She remembered defendant coming over to pick up his daughter but did not remember defendant coming into the room in which she was watching television. K.T. admitted writing a note on the night of the incident, which was introduced at trial, and she stated everything in the note was true.
Deputy Wayne Weidenbacher responded to the call at K.T.'s residence. When he arrived, K.T.'s mother was crying and shaking and was visually upset, as was K.T. Deputy Weidenbacher received a handwritten note from K.T. and took M.T.'s statement. According to M.T.'s statement, defendant had asked to use the bathroom and went upstairs. M.T. thought it was odd because the downstairs bathroom was not occupied. M.T. later went upstairs and found defendant lying with K.T. in the master bedroom. When M.T. walked into the room, she saw defendant abruptly remove his hand from K.T.'s stomach. At trial, M.T. admitted seeing defendant in the room with K.T. but denied seeing any inappropriate activity between defendant and K.T.
Approximately ten days after the incident, Detective Scott Guillory contacted defendant and advised him he was under investigation. Defendant voluntarily presented himself at the Detective Bureau and gave a statement after being advised of and waiving his rights. The statement was not taped. According to Detective Guillory, defendant initially stated he went to the residence to pick up his daughter but never went upstairs. Defendant eventually stated he went upstairs to use the bathroom. He then admitted standing in the doorway of the room where K.T. was lying. Defendant denied ever going into the room.
Defendant, age 46, testified at trial that Detective Guillory's testimony regarding *1139 his statement was inaccurate. Defendant stated he never denied going upstairs or into the bedroom. Defendant testified he went to the residence to pick up his daughter at the request of M.T. He explained his daughter was upstairs when he arrived and he went upstairs to get her. He stated he was upstairs for maybe two minutes helping his daughter find her shoes and socks. He testified he briefly sat down in the television room to get out of the way of the television but denied ever improperly touching K.T.

LAW
In brief to this court, defendant assigns four errors. In the first he argues that the evidence presented is insufficient to support the conviction of indecent behavior with a juvenile.[3] He claims the jury's verdict was irrational, and challenges the credibility of the evidence by asserting the allegations resulted from an angry child who had argued with her mother earlier in the day and whose divorced parents fought over her mother's relationship with defendant. Defendant claims the State failed to prove he behaved indecently with the victim. Defendant points out that the victim refused to testify at trial about the incident, and later recanted her allegations. Additionally, he notes that he had no history of sexual improprieties and had been alone with the victim and other children on multiple occasions without incident. He further points out that he voluntarily went to the police and gave a statement.
The State maintains it met its burden of proof through the videotape of the victim's interview at the CAC and the victim's handwritten note about the incident.
When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 978. In assignment of error number three, defendant challenges the admissibility of the videotape. When determining the sufficiency of the evidence, the reviewing court looks at all the evidence, both admissible and inadmissible. The rationale is that when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal. The reviewing court then considers whether there was a trial error, such as admitting inadmissible evidence. If the reviewing court determines there was trial error, which was not harmless, the defendant is entitled to a new trial. In such circumstances, the defendant is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. State v. Hearold, 603 So.2d 731, 734 (La.1992).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes *1140 that the evidence at the trial established guilt beyond a reasonable doubt. State v. Breaux, 02-382 (La.App. 5 Cir. 10/16/02), 830 So.2d 1003, 1009. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to reweigh the evidence. State v. Carter, 98-24 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, 708, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444. As such, a reviewing court accords great deference to the finder of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Reyes, 98-424 (La.App. 5 Cir. 12/29/98), 726 So.2d 84, 88, writ denied, 99-1474 (La.10/8/99), 750 So.2d 967.
To support a conviction for indecent behavior with a juvenile under LSA-R.S. 14:81, the State must prove that 1) there was an age difference of greater than two years between the accused and the victim, who was not yet seventeen, 2) the accused committed a lewd or lascivious act upon the person or in the presence of a child, and 3) that the accused intended to arouse or gratify either his own or the victim's sexual desires. State v. Battaglia, 03-692 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 708. Specific intent need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant. Id.
The evidence established that K.T. was twelve years old at the time of the offense and defendant was forty-six years old. At trial, K.T. refused to testify about the incident. However, the videotaped interview of K.T. conducted at the CAC on June 13, 2002 was played for the jury. During the interview, K.T. detailed the incident. She stated defendant squeezed and rubbed her breasts. She explained that defendant shifted her bra to the side which allowed him to rub the skin of her breasts. K.T. also stated defendant grabbed her pubic area over her clothes and attempted to unbutton her pants. She further stated that, while defendant was touching her, he asked her several times whether she liked it when the boys did the same things to her.
The State also introduced a handwritten note which K.T. admitted writing. During her trial testimony, K.T. stated she wrote the note the same night of the incident and that everything she wrote in the note was true. The note was given to the police when they came to investigate the night of the incident. In the note, K.T. wrote that defendant got under the covers with her and touched her breasts and pubic area. She also stated defendant tried to open her pants.
Further, the State presented the testimony of Deputy Wayne Weidenbacher, who investigated the incident on the night it occurred. Deputy Weidenbacher testified that K.T.'s mother gave a statement the night of the incident stating she saw defendant lying on the floor with K.T. She stated that, when she walked into the room she saw defendant abruptly remove his hand from the top of the blanket which was on top of K.T.'s stomach. During her trial testimony, K.T.'s mother denied seeing any inappropriate activity between defendant and K.T. She further denied seeing anyone under a blanket and stated defendant was sitting at a distance from K.T.
The credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d *1141 1066. "The inconsistencies in the witness's statement are one of any number of factors the jury weighs in determining whether or not to believe the witness's trial testimony." Id. at 1045. The Louisiana Supreme Court has made it clear that "the Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial." State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293.
Although defendant denied improperly touching K.T., and K.T.'s mother denied seeing any inappropriate behavior between the two, the jury apparently found the State's evidence more credible. The victim never denied the incident occurred even though she refused to testify about the incident during her trial testimony by claiming she did not remember anything. Further, the victim admitted writing the handwritten note about the incident that was introduced into evidence and testified that its contents were true.
Defendant argues the evidence showed the victim's allegations were the result of an angry child who had fought with her mother earlier in the day and whose father disapproved of defendant's relationship with the victim's mother. The jury was fully aware of the family dynamics at the time of the incident. The record shows the victim's mother and father had been through a bitter divorce. The record also establishes that, at the time of the incident, defendant was dating the victim's mother to the disapproval of the victim's father. Additionally, K.T.'s mother testified that, on the day of the incident, she and K.T. had an argument and were not really talking to each other that night. K.T. admitted she was sent upstairs that night because she did not want to bathe her little sister. Fully aware of these dynamics and events, the jury still believed the victim's version of the events.
A review of the record as a whole shows the jury's determination was reasonable. The jury made a credibility determination. The record supports the jury's credibility determination and contains sufficient evidence to uphold defendant's conviction for indecent behavior with a juvenile. We find this assignment of error to be without merit.
In his second assignment of error, defendant argues the trial court erred in denying his motion for new trial because the victim recanted her testimony after trial. He maintains that new details about the victim's allegations surfaced after trial through the victim's mother and grandmother, which constituted new evidence and warranted a new trial.
At the motion for new trial, defendant presented the testimony of the victim, her mother and her grandmother. The victim testified that defendant did nothing improper with or to her. She stated that she made the allegation against defendant because her father gave her the idea. K.T. stated her father told her negative things about defendant and she did not want her mother near defendant. She explained that she told her mother and grandmother after the trial that nothing happened. Both K.T.'s grandmother and mother corroborated K.T.'s testimony by stating K.T. told them after trial that defendant did nothing to her.
K.T.'s grandmother further testified that she helped K.T. write the handwritten note detailing the incident. She stated she did not like defendant at the time she helped K.T. write the note. She claimed she did not know the "whole story" and now believed defendant to be a caring man who helped K.T.'s family. She believed K.T.'s false allegations against defendant were encouraged by K.T.'s father, with whom K.T. did not have a good relationship.
*1142 K.T.'s mother also testified that K.T. was motivated to lie because of her father's threats. K.T.'s mother further testified that the incident could not have occurred because she went upstairs immediately after defendant and did not see any improper conduct between defendant and K.T. She claimed the statement she gave to the police the night of the incident about seeing defendant move his hand from under the cover was false.
In denying the motion for new trial, the trial court stated:
I've heard all the testimony of the witnesses. I, again, have heard testimony today. I'll tell you. Some things concern me about the testimony, because I believe that some of the information provided under oath is untruthful. I firmly believe that there are people who have lied to the Court, because of discrepancies in their testimony.
The Court does not find a basis for granting a new trial. The information provided at the trial of the matter, by [the victim], was that she was a very uncooperative witness, as I recall, as was [the victim's mother], as was [the victim's grandmother]. However, [the victim], at the trial, although she wouldn't go into the facts, she would not say that what she said on that tape was not true.
[The victim's mother], today, for whatever reason, says that she really doesn't remember the events of that night too clearly. She did give a statement to the police where she indicated that she saw the Defendant under these covers as they lay on the floor, with her daughter. All of a sudden today, she doesn't remember that. All of a sudden today, that didn't happen, you know. I find it offensive. She's lying. Either she lied then, or she lied now; she is an admitted liar. I certainly cannot grant a new trial based on anything that would come from her mouth.
Again, the Court finds no basis for a new trial in this matter, based upon what it has heard today. Certainly, there is a conflict, a domestic dispute between [the victim's mother] and her husband. I don't know if she's  if they're divorced at this point in time or not. I'm not involved in their domestic matter. It's being heard by another Court.
But the Motion for New Trial is denied.
LSA-C.Cr.P. art. 851(3) provides that a motion for new trial may be based on newly discovered evidence if the following four requisites are met: 1) the evidence must have been discovered since the trial; 2) the failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; 3) the evidence must be material to the issues at trial; and 4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. State v. Bolden, 03-266 (La.App. 5 Cir. 7/29/03), 852 So.2d 1050, 1063. The trial court's ruling as to whether these requisites are met is entitled to great weight and a denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion. Id. In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring a different verdict, but whether the new evidence is so material that it ought to produce a verdict, different from that rendered at trial. State v. Smith, 520 So.2d 1252, 1255 (La.App. 5 Cir.1988), writ denied, 523 So.2d 1320 (La.1988). Recantations are highly suspicious and, except in rare circumstances, a motion for new trial should not be granted on the basis of a recantation. The rationale is that the recantation is tantamount to an admission of perjury so as to discredit the witness at a later *1143 trial date. State v. Bolden, supra at 1064. It is not an abuse of discretion on the part of the trial court to refuse to grant a motion urged on such a basis. State v. Clayton, 427 So.2d 827, 833 (La.1982).
As evidenced in its ruling, the trial court recognized that recantations are highly suspicious. There were no special circumstances presented that suggested the latest testimonies of the victim, her mother, and her grandmother were truthful. Immediately after the incident, the victim wrote a note outlining the incident. Ten days later, she gave a videotaped interview where she unwaveringly explained in detail how defendant touched her. Six months later at trial, the victim refused to testify about the incident claiming she had no memory of it but consistently stated what she wrote in the note was true. Approximately one year after the incident, at the hearing on the motion for new trial, the victim completely changed her story and denied defendant did anything to her. While both K.T.'s mother and grandmother testified at the motion for new trial that K.T. recanted her allegations against defendant since the trial, neither gave a specific date or period of time when the recantation occurred. At trial, it was shown that defendant was a wealthy man who took care of K.T.'s mother and her children. At the hearing on the motion for new trial, it was established that defendant had expressed a desire to marry K.T.'s mother and have her live in his big house. Based on these facts, the recantations are too suspicious to be believed. See, State v. Clayton, 427 So.2d 827 (La.1982).
Defendant argues that the recantations are valid because the allegations were made out of fear of the victim's father. However, nothing was presented at the hearing on the motion for new trial to show that circumstances had changed. The victim testified at the motion hearing that she was not currently living with her father. We note that there was no evidence that she lived with her father either at the time of the incident or at the time of trial. To the contrary, the evidence showed the victim lived with her mother at the time of the incident.
The theme of the evidence at the motion hearing was that the victim was influenced to make the allegations by her father of whom she feared. The victim, her mother and defendant all testified at the motion hearing that the victim's father had threatened them. However, none of this was new evidence that could not have been discovered before trial. In fact, evidence of the alleged influence and threats were presented at trial through the testimony of the victim, her mother and defendant. At trial, the victim testified that her father tried to make her think negatively of defendant and "sort of" pressured her testimony. Also, the victim's mother and defendant testified at trial that defendant had threatened them.
Under the circumstances of this case, we find no error in the trial court's denial of defendant's new trial motion.
In his third assignment of error, defendant asserts the trial court erred in admitting the videotaped interview of the victim into evidence because the victim refused to testify about the incident at trial. Defendant alleges the admission of the videotape denied his right to confrontation. Defendant maintains the victim's refusal to answer questions about the alleged touching rendered her unavailable and, thus, the videotaped interview was inadmissible under LSA-R.S. 15:440.5.
The State played the videotaped interview of the victim during the testimony of its first witness, Omalee Gordon. Defendant objected to the videotape on the basis it was premature because the victim had not been called to testify. He further argued that the tape was inadmissible if *1144 the victim did not testify. The State responded that it planned to call the victim and that she would be available for both direct and cross examinations. The trial court then admitted the tape into evidence and it was played for the jury.
The victim was later called to testify. She reluctantly answered the prosecutor's questions and explained that she was angry because she had to testify. The victim selectively testified about the day of the incident claiming she did not remember much. She remembered watching television with her little sister and defendant coming over to pick up his daughter. She remembered writing a note the night of the incident and testified everything in the note was true. However, the victim claimed she could not remember what was in the note. She further claimed she did not remember defendant doing anything to her. Defense counsel then cross-examined the victim. He did not inquire into the incident but rather only questioned the victim about possible influences on her testimony. At the conclusion of the victim's testimony, defendant did not renew or lodge a new objection to the admissibility of the videotape.
Prior to resting, the State sought to admit all of its exhibits, including the previously admitted videotape which was labeled S-1. Defendant noted his "earlier stated objection to Number 2," which was the victim's handwritten note. In order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. LSA-C.Cr.P. art. 841. A new basis for an objection may not be raised for the first time on appeal. State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem. It is also intended to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. Id.
Defendant never objected to the admissibility of the videotape on the basis of the victim's unavailability at the trial court level. Defendant's initial objection was based on prematurity because the victim had not testified. Defendant did not assert, either during or after the victim's testimony, that the victim was an unavailable witness because of her responses. He never asked the trial court to declare the victim unavailable and never suggested at trial that he was not able to effectively cross-examine her. Thus, we find defendant is raising a new ground for his objection to the admissibility of the videotape on appeal that was not raised at the trial court. As such, this issue is barred from review.
In the final assignment of error, defendant alleges the trial court improperly questioned one of the jurors about his verdict thereby casting doubt on the verdict. Defendant contends that the juror, Mr. Simmons, was singled out and questioned at the bench about his verdict because he wrote "no" on his polling slip. He argues Mr. Simmons was intimidated by the questioning and was unduly influenced to agree to a guilty verdict. As a result, defendant maintains the verdict was tainted with uncertainty. The State maintains defendant waived any error when he did not object to Mr. Simmons being called to the bench and when he participated in questioning Mr. Simmons about his verdict.
We first address the State's contention that defendant has failed to preserve this issue for our review by participating in the *1145 questioning. We have determined that defendant's motion for a mistrial immediately after Mr. Simmons was questioned sufficiently preserved his right to appeal the issue. See; State v. Bannister, 97-48 (La.App. 4 Cir. 1/27/99), 726 So.2d 1135; State v. James, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, 130, writ denied, 00-1595 (La.3/23/01), 787 So.2d 1010. Accordingly, we will consider the merits of this assignment.
After the verdict was read, the jury was polled. The trial judge noted that juror Simmons wrote "no" on his polling slip and called Mr. Simmons to the bench. In the presence of the prosecutor and defense counsel, the trial judge asked Mr. Simmons if he understood the question of whether or not this was his verdict. Mr. Simmons responded, "I ain't never did this before." The trial judge explained to Mr. Simmons that the question is whether the verdict that the jury rendered and that was read to the Court was his verdict, "the one [he] deliberated and agreed in the jury room." The trial judge then asked Mr. Simmons if he agreed with the verdict. The transcript notes there was no audible response.
Thereafter, the following exchange occurred:
THE COURT:
The polling question is  the question is:
"Is this your verdict?" What does that say?
JUROR SIMMONS:
"No."
THE COURT:
So, is this your verdict or is it not your verdict?
JUROR SIMMONS:
That's my verdict.
THE COURT:
Well, you need to explain to us what happened. I mean, I don't understand.
JUROR SIMMONS:
Yeah, you have to explain it to me.
THE COURT:
You're telling me that you agree with the verdict of the jury?
....
JUROR SIMMONS:
Yes.
THE COURT:
But when the polling slip was handed to you, you wrote the word "No"?
JUROR SIMMONS:
Yeah, I did.
THE COURT:
You need to tell us.
JUROR SIMMONS:
I was just confused. I ain't never been in this situation and the whole situation got me just totally confused.
THE COURT:
You've got a question, Mr. Schmidt?
MR. SCHMIDT:
Yes. Mr. Simmons, is it your determination after hearing all of the evidence and reviewing that and discussing that, would you vote not guilty for Mr. McClain, or would you vote guilty? Aside from what anybody voted, I'm just asking your personal vote. Would you vote not guilty or guilty?
JUROR SIMMONS:
Guilty.
THE COURT:
You said "guilty"?
JUROR SIMMONS:
Yeah.
THE COURT:
So, on the polling slip where it says "No," that's incorrect?
JUROR SIMMONS:
Yeah.
THE COURT:
And you do agree with the fellow members of your jury that the verdict is *1146 guilty of indecent behavior with a juvenile?
JUROR SIMMONS:
Yeah.
Thereafter, defense counsel objected to the verdict and moved for a mistrial. Defense counsel argued Mr. Simmons appeared confused and seemed intimidated, forcing him to agree with the other jurors. The trial judge noted that defense counsel asked Mr. Simmons whether he felt defendant was guilty or not guilty and Mr. Simmons responded guilty. The trial judge stated Mr. Simmons appeared confused about the procedure.
LSA-C.Cr.P. art. 812 provides:
The court shall order the clerk to poll the jury if requested by the state or the defendant. It shall be within the discretion of the court whether such poll shall be conducted orally or in writing by applying the procedures of Paragraph (1) or Paragraph (2) of this Article.
....
(2) The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results. If a sufficient number of jurors as required by law to reach a verdict answer "yes" the clerk shall so inform the court. Upon verification of the results, the court shall order the clerk to record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer "Yes," the court may remand the jury for further deliberation, or the court may declare a mistrial in accordance with Article 775.
The trial judge did not technically follow instructions set forth in LSA-C.Cr.P. art. 812(2) when he questioned the juror as opposed to remanding the jury for further deliberation or declaring a mistrial. However, we find the error to be harmless. In a similar case, State v. James, supra, defendant claimed the trial court erred in interrogating a juror regarding her "no" vote during the written polling of the jury in violation of LSA-C.Cr.P. art. 812. In James, the trial court called the juror to the bench and questioned her about her verdict. The juror revealed that she had initially felt the defendant was not guilty but felt outvoted and eventually voted that he was guilty. The Third Circuit concluded that, although the trial court did not comply with LSA-C.Cr.P. art. 812 when it failed to remand the entire jury panel for further deliberations or declare a mistrial, the error was harmless. The court noted the juror readily admitted she voted to convict during deliberations. The court further noted the record did not reveal she was pressured to change her vote during deliberations but simply changed her mind and voted with the majority. The court determined that by questioning the juror, the trial court determined that all six jurors voted to convict the defendant. Also, in State v. Amato, 96-606 (La.App. 1 Cir. 6/30/97), 698 So.2d 972, 988-989, writs denied, 97-2626 and 97-2644 (La.2/20/98), 709 So.2d 772, the First Circuit found the trial court's questioning of a juror who had written "no" on the written polling slip to be harmless error. In Amato, the juror wrote "no" on his polling slip when asked whether the verdict was his verdict. Thereafter, the trial court orally polled the jury at which time the juror responded "yes." The trial court further questioned the juror who admitted he was confused. The First Circuit found any error in the interrogation of the juror by the trial court was harmless because the record *1147 showed beyond a reasonable doubt that the verdict was unanimous.
In the present case, Mr. Simmons clearly stated he believed defendant was guilty. The record, as well as the personal observations of the trial judge, reflects Mr. Simmons was simply confused by the polling process. The questioning of Mr. Simmons was not suggestive or intimidating but was rather a harmless attempt to clarify the verdict. Mr. Simmons stated he was confused by the process and firmly stated he believed defendant was guilty. Therefore, we find that the failure to comply with La.C.Cr.P. art. 812 in this case is harmless error.
Finding no merit in any of defendant's assignments of error, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] LSA-R.S. 46:1844(W)(3) allows a court to use the initials of a crime victim who is a minor or a victim of a sex offense "to whatever extent ... [deemed] necessary to prevent the public disclosure of the name, address, or identity of such a crime victim." (Emphasis added.) Since K.T. was thirteen years old at the time of trial, her initials, as well as her mother's initials, are used to protect her identity.
[2] K.T.'s parents were divorced at the time of the incident.
[3] It is noted defendant did not file a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. Although he did file a motion for new trial, procedurally there is a distinction between the two motions. This failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982); State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1017, footnote 3.