HIGGINBOTHAM, J.
| ^Defendant, Christopher Johnson, was charged by amended grand jury- indictment with second degree murder, a violation of La. R.S. 14:30.1.[1],[2] He pled not guilty. A new sanity commission was appointed, and the trial. court ultimately found defendant competent to stand trial. Following a jury trial, defendant was found guilty as charged. The trial court denied defendant’s ‘ motions in arrest of judgment, for postverdict judgment bf acquittal, and for new trial. The trial court sentenced defendant to the • mandatory term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[3] Defendant now appeals, alleging three assignments of error.

FACTS

■ On March 26, 2001, Vincent Bacile (the victim) was shot to death during an attempted armed robbery by two men at the Piggly Wiggly grocery store in Independence, Louisiana. The attempted armed robbery and subsequent shooting occurred after the store had closed for the evening, and while several employees were performing their routine nightly tasks.
Prior to the shooting, Bacile and another employee, Gary Matthews, were talking with Roy Navarra, a, part owner of the Piggly Wiggly, in the rear of the store. As the men talked, a masked individual appeared behind Bacile and began to strike him with a lug wrench.[4] Soon thereafter, a second perpetrator appeared and held a gun to the back of Navarra’s head. The perpetrators began to march the store' employees to the stock room. After everyone reached the' stock room, Bacile ran to | Rthé front of the store and began yelling for someone to call 911. *826 Both perpetrators followed behind him. During the ensuing chase, the victim was shot and killed by a single gunshot wound to his neck. Following the shooting, at least one of the perpetrators tried unsuccessfully to break into the store’s office, where two other employees had hidden. Defendant, Johnson, was apprehended on the evening of the incident. He later gave a statement to the police in which he admitted his involvement, but stressed that no one was supposed to get hurt during the robbery.

DENIAL OF POSTTRIAL MOTIONS

In his third assignment of error, defendant contends that the trial court erred in denying his motions in arrest of judgment, for new trial, and for postver-dict judgment of acquittal.[5] Defendant’s primary argument is that the state did not present sufficient evidence at trial to support his conviction for second degree murder. He also argues that the trial court should have granted these motions in the interest of justice because the actual shooter, Kelvin’Thomas, was convicted only of manslaughter.
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S., Const, amend. XIV; La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the- evidence in the light most favorable to -the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, )4for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La.App. 1st Cir.6/21/02), 822 So.2d 141, 144.
When a conviction' is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 & 2000-0895 (La.11/17/00), 773 So.2d 732.
Under the theory of felony murder provided in La. R.S. 14:30.1(A)(2)(a) (prior to 2008 amendment), the state is not required to prove that the defendant possessed specific intent to kill or inflict great bodily harm. This provision defines second degree murder' as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including armed robbery, even though ■ he has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(2)(a) (prior to *827 2008 amendment); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 934, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). Thus, under the explicit language of this provision, specific intent to kill or to inflict great bodily harm is not an essential element of felony murder under La. R.S. 14:30.1 (A)(2)(a) (prior to 2008 amendment).
 All persons concerned ifi the commission of a crime, whether-present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit |athe crime, are principals. La. R.S. 14:24. In felony murder, the mens rea of the underlying felony provides the malice necessary to transform an unintended homicide into a murder. Moreover, under general principles of accessorial liability, all parties to a crime are guilty for deviations from the common plan that are the foreseeable consequences of carrying out the plan. State v. Smith, 98-2078 (La.10/29/99), 748 So.2d 1139, 1143 (per curiam). Thus, when a murder occurs during the perpetration or attempted perpetration of • an enumerated felony (such as armed robbery), one need not possess specific intent to kill or inflict great bodily harm, nor be the person who physically killed the victim, in order to be a principal to second degree murder. See La. R.S. 14:24 & 14:30.1(A)(2)(a) (prior to 2008 amendment).
In the instant case, defendant does not dispute that an attempted armed robbery and subsequent homicide by shooting occurred. Further, he does not dispute his identity as one of the two perpetrators who were present inside the Piggly Wiggly. However, he argues that because the state did. not prove that he (as the perpetrator with the lug wrench) had any specific intent to kill the victim, his conviction for second degree murder is improper. He also argues that he was fleeing from the.armed robbery at the time that his accomplice shot and killed the victim.
Defendant, did not testify at trial. The facts of the incident were described to the jury primarily through the testimony of Roy Navarra and Tangipahoa Parish Sheriffs Detective Gary Baham, (who took defendant’s statement). Roy Navarra testified that twoperpetrators were involved in the incident — one who was armed.with a lug wrench (defendant) and one who was armed with a gun (Kelvin Thomas). He explained that both men ran after the victim once he fled toward the front of the store. At that point, he and Gary Matthews exited the store through its rear door. As they were doing so, he heard a 'gunshot. Mr. Navarra described seeing both men ^running together from the front of the store to the-back of the store, heading toward a nearby trailer park.[6]
• Detective' Baham testified at trial regarding the statement defendant gave following his arrest. After- defendant was arrested and informed of his Miranda[7] rights, he agreed to speak to Detective Baham. In this statement, defendant described that he and his accomplice hid -in the Piggly Wiggly store for a few hours prior- to the robbery. Once the store closed, he and Thomas intended to tie up any store .employees using duct tape in order to rob the- store. Defendant- described to Detective Baham that the victim *828 took a “heroic action”-añd spun to confront him, so defendant hit him 'several times with the lug wrench. During this struggle, the victim apparently took the lug wrench from defendant’s possession. When the victim subsequently ran toward ■the front of the store, both defendant and his accomplice ran after 'him. Defendant told Detective Baham that, at that point, Mr. Navarra began to run in a different direction. Defendant split from his accomplice and began to pursue Mr. Navarra. When defendant heard the gunshot, he ran back to the front of the store. There, he and his accomplice began to hit the office window in an attempt to gain entry, but they were unsuccessful. They ultimately fled through the store’s front door.
Although - defendant argues on appeal that the state failed to prove his intent to commit second degree murder, that proof is unnecessary under these circumstances. The state adequately demonstrated that defendant participated in a deliberate armed robbery attempt wherein his accomplice possessed a--firearm.- While defendant might hot have specifically intended for the victim’s death to occur during this incident, he actively participated in creating the circumstances that led 17directly to the homicide. Viewed in the light most favorable to the state, the evidence was sufficient to prove that defendant was a principal to second degree murder-under the felony-murder.rule. While defendant argues that he “disengaged from his partnership” with his accomplice at the time of the -shooting, the uncontroverted evidence presented at trial demonstrates that defendant stopped chasing the victim only to pursue Mr. Navarra. Moreover, once he heard the gunshot, defendant returned to the front of the store and continued to assist his accomplice in attempting to gain entry into the office.
An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). The jury heard all of the evidence presented at trial and found defendant guilty of second degree murder. We cannot say that the jury’s determination was irrational under the facts and circumstances presented to it. Ordodi, 946 So.2d at 662.
In addition to his sufficiency of evidence argument, defendant argues that his conviction should be reduced to manslaughter., He contends that because his accomplice (the actual shooter) was convicted of this, .lesser offense, his. second degree murder conviction should be reduced in the interest of justice.
We note.first that defendant had previously pled guilty to manslaughter, -successfully withdrew that plea, and later turned down an additional plea offer-from the state. Further, based on- the state’s renewed plea offer.that included an additional plea and five year sentence for perjury, it is possible that defendant’s own testimony at his codefendant’s trial led to his codefendant’s; less severe conviction. Finally, when a crime has been committed by multiple principals, separate juries may reach different results on essentially the same set of facts in considering the guilt of each [sprincipal. See State v. Rash, 444 So.2d 1204, 1206 (La.1984). Therefore, the interest of justice does not require that defendants instant conviction be reduced to manslaughter.
This assignment of error is without merit.

*829
CONFRONTATION CLAUSE

In his first assignment of error, defendant argues that his Sixth Amendment right to confront his accuser was violated at trial. Particularly, he argues that the testimony of a DNA analyst who did not perform any testing, but simply reviewed the report of another analyst, violated his right to cross-examine a witness against him.
Julia Naylor Kirk, a DNA analyst with the Louisiana State Police Crime Lab, testified at trial regarding DNA evidence linking defendant to some clothing and a Halloween mask recovered from an area near the Piggly Wiggly. Defendant argues that Ms. Kirk should not have been allowed to testify at trial because another analyst, Natasha Poe, actually performed the DNA tests and generated the report.
First, we point out a discrepancy between defendant’s claim — that Natasha Poe alone conducted the DNA comparison tests — and Ms. Kirk’s testimony that she performed the comparisons. Nonetheless, we note several instances in Ms. Kirk’s testimony where she appears to state that Ms. Poe did some of the testing.
Regardless of which analyst performed the testing, the record is clear that defendant never made a written or oral objection to any part of Ms. Kirk’s testimony regarding the DNA testing, including a confrontation objection. In order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La. Code Crim. P. art. 841(A). A new basis for an objection may not be raised for the first time on appeal. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged Iflirregularity so that he may cure the problem. It is also intended to prevent the defendant from gambling for a favorable verdict and then reporting to appeal on errors that might easily have been corrected by,an objection. See State v. McClain, 2004-0098 (La.App. 5th Cir.6/29/04), 877 So.2d 1135, 1144, writ denied, 2004-1929 (La.12/10/04), 888 So.2d 835. See also State v. Young, 99-1264 (La.App. 1st Cir.3/31/00), 764 So.2d 998, 1005.
This assignment of error was not properly reserved for appellate review.

ADMISSION OF EVIDENCE

In his remaining assignment of error, defendant argues .that the trial court erred in admitting into evidence a gun that was found in a burn pile several years after the offense. Defendant argues that this evidence was irrelevant because it was not linked either to him or to the crime.
At trial, Jatties Holden testified that on July 9, 2003, he was tasked with cleaning up a burned trash pile in a trailer park in Independence. In doing so, he found what appeared to bé a burned firearm. Raymond Jackson, of the Independence Police Department, collected the weapon from the debris pile and gave it to the Tangipa-hoa Parish Sheriff’s Office.
Pat Lane, a firearms expert from the Louisiana State Police Crime Lab, cleaned the recovered gun and used pieces from a reference weapon to return the gun to a condition in which it was able to be. test fired. . He explained at trial that the critical “working parts” for the test fire were those that would have been used on the night of the shooting. He found that a spent .22 caliber cartridge casing recovered near the victim’s body matched a casing that he test fired using the recovered weapon.
Following Mr. Lane’s testimony, defense counsel objected to the introduction of the gun into evidence on the basis of its rele- *830 vanee. She argued that because the state admitted during its opening statement that defendant was not the shooter, the Imgun was not relevant. Ultimately, the trial court overruled this objection, reasoning that the state still needed to prove that defendant was a principal to a second degree murder, and the gun (and its recovery from an area in proximity to the Pig-gly Wiggly) was relevant to this aspect of the case.
“Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than'it would be without the evidence. La. Code Evid. art. 401. Evidence that is not' relevant is not admissible. See La. Code Evid. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. Code Evid. art. 403.
The trial court correctly concluded that the recovered gun was relevant evidence. As the court noted, despite the state’s admission that defendant was not the person who shot the victim, the state still had the burden of proving that a homicide occurred. This recovered weapon had a firing pin that left identical marks on both a cartridge casing recovered near the victim’s body and one test fired in the Louisiana State Police Crime Lab. Therefore, it was relevant to the state’s case that a homicide occurred. While defendant contends that this evidence was not linked to him or the crime, Mr. Lane’s testimony provides a factual link between the gun and the homicide. Further, nothing about the weapon’s introduction was unduly prejudicial, confusing, or wasteful of time. As a result, the trial court did not err or abuse its discretion in admitting this evidence.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. Also charged in the same instrument was codefendant Kelvin Thomas. Thomas was ultimately convicted of manslaughter, and his conviction and sentence were previously affirmed by this court. State v. Thomas, 2010-1637 (La.App. 1st Cir.5/6/11), 66 So.3d 79 (unpublished).

. Defendant previously pled guilty to manslaughter and was sentenced to twenty-five years in exchange for his truthful testimony against his codefendant. Following Thomas’s trial, defendant filed an application for post-conviction relief, seeking to withdraw his earlier plea on the basis that his trial counsel had improperly withdrawn a motion for a sanity commission. The trial court allowed defendant -to withdraw this plea, and defendant rejected an offer by the state that would have allowed him to plead guilty to manslaughter and perjury in exchange for -¿ sentence totaling thirty years.

. The trial court noted prior to sentencing that defendant had moved for reconsideration of sentence prematurely and denied that motion "without prejudice,” Defendant did not ask for reconsideration of sentence following his formal sentencing.

. This item was also described at trial as a "crowbar.”

. We note that these filings are not included in the appellate record, but it appears from the transcript that the trial court meticulously addressed each issue raised in them at defendant’s .sentencing hearing.

. Mr. Navarra's wife, Barbara, also testified at trial regarding some of the facts of the incident, but she never saw either perpetrator because she hid in the locked office they attempted to enter. While.she heard the gunshot, she did not witness the shooting.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).